UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA

– against –

SAMMY SMITH,

           Defendant.

17-CR-221

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

**JACK B. WEINSTEIN**, Senior United States District Judge:

**Appearances**

**For United States:**

    Kaitlin T. Farrell
    United States Attorney's Office
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, NY 11201
    718-254-6072

**For Defendant:**

    Allegra W. Glashausser
    Federal Defenders of New York, Inc.
    1 Pierrepont Plaza, 16th Floor
    Brooklyn, NY 11201
    212-417-8739



1

**Table of Contents**
I. Introduction .................................................................................................... 2
II. Offense........................................................................................................... 4
III. Guilty Plea .................................................................................................... 4
IV. Sentencing Hearing........................................................................................ 4
V. Offense Level, Category, and Sentencing Guidelines Range........................ 5
VI. Law ................................................................................................................ 5
VII. 18 U.S.C. § 3553(a) Considerations .............................................................. 5
VIII. Sentence ........................................................................................................ 7
IX. Conclusion..................................................................................................... 8

I. Introduction

The sentencing hearing and pre-sentence report reveal the following:

Defendant, Sammy Smith, a forty year old naturalized citizen came to this country in 2004. He is high school graduate making a living as a truck driver delivering produce at night. He has a Turkish music college degree.

Married and divorced, defendant has a ten year old son he adores and drives to and from school, cooperating with his ex-wife in bringing up the boy. Defendant lives alone in a small apartment. And he recently acquired a cocaine habit.

Smith is naïve: he has no criminal record. But he was convinced by a friend to pack in his luggage internal operating parts of a popular handgun, the Glock, fly to Turkey and sell them; if he was stopped at John F. Kennedy Airport ("JFK") he could explain he was taking them to be engraved in the ancient Turkish tradition. The explanation made no sense since the internal parts he carried could not be seen after the covering portions of the gun were attached. The parts in his luggage required an export license, as the United States agents explained to him after they seized the gun parts he was trying to smuggle out of the country.

Following further advice from his friend, he packed more of the parts for which he obtained no license, and boarded a plane in Cleveland to avoid agents at JFK. The plane stopped

2

at JFK as scheduled. His baggage was searched, and he was arrested for violation of 22 U.S.C. § 2778, the Arms Export Control Act.

Denying the government's request for a guideline sentence—a long, four or five year sentence of incarceration followed by years of supervised release—the court sentenced defendant to two months of incarceration followed by six months of supervised release. The sentence will probably be served in New York City, where his son can visit. He can pay two months' rent in advance, thus preserving a place to live in on release, and he can drive his son to and from school when it begins in two months. The short supervised release period is explained as a policy matter in *United States v. Trotter*, No. 15-CR-382, 2018 WL 3321426 --- F.Supp.3d ---- (E.D.N.Y. July 5, 2018).

Defendant's aberrational criminal conduct was apparently fueled by a cocaine addiction. In the five years preceding his crime, he spent $200,000 on the drug, forcing him to supplement his income. Prior to his arrest, he had gone to inpatient rehabilitation treatment twice, but failed to maintain sobriety. The addiction is now apparently dormant; he is said to have gone almost a year without using cocaine. *See* Sentencing Hearing Transcript (July 9, 2018) ("Sent. Hr'g Tr.") at 18:21-24.

At the sentencing hearing, the court made it clear to Smith that he must remain sober. "Stay out of trouble and stay away from all drugs because your mind gets clouded and you can't make intelligent decisions, and if you continue with narcotics you can . . . go to prison." *Id.* at 27:12-15. Supervised release will include drug treatment. His probation officer and attorney should press on defendant the importance of sobriety.

II. Offense

On June 3, 2016, Smith was stopped at JFK before boarding a flight to Istanbul, Turkey. PSR at ¶ 6. Customs and Boarder Protection ("CBP") officers seized handgun components from defendant's checked bag and explained to him that an export license was required to export the parts. *Id.* at ¶ 7. Defendant told the agents that he had planned to sell the firearm parts in Turkey after he had them engraved—an explanation that made no sense since any engraving would be concealed when the gun covers were attached. *Id.* at ¶ 6. He acknowledged that he did not have an export license. *Id.*

Despite the warning, on July 23, 2016, defendant boarded a flight traveling from Cleveland, Ohio to Istanbul, Turkey, with the same type of firearm parts in his luggage. *Id.* at ¶ 8. During a layover at JFK, he was stopped by CBP officers, who seized the parts from his checked bag and verified that he did not possess a license for their export. *Id.*

Homeland Security Investigations ("HSI") arrested Smith at his home in New York on January 24, 2017. *Id.* at ¶ 10.

III. Guilty Plea

On October 6, 2017, defendant pled guilty to attempting to export from the United States to Turkey firearms components, without the proper license or written approval of the State Department, in violation of 22 U.S.C. § 2778(b)(2) and 2778(c) (Arms Export Control Act). PSR at ¶ 1.

IV. Sentencing Hearing

A sentencing hearing was conducted on July 9, 2018. *See* Sent. Hr'g Tr. The proceedings were videotaped to develop an accurate record of body language and courtroom atmosphere. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the value of video recording).

4

V. Offense Level, Category, and Sentencing Guidelines Range

Defendant's base offense level is 26. PSR at ¶ 14; 22 U.S.C. § 2778; United States Sentencing Guidelines ("U.S.S.G.") § 2M5.2(a)(1). He received a two-point reduction for acceptance for responsibility. PSR at ¶ 21; U.S.S.G. § 3E1.1(a). He did not receive a one-point deduction for timely notifying authorities of his intention to plead guilty because he pled guilty only one week before trial. *See* Sent. Hr'g Tr. The total offense level is 24. Defendant has no criminal record; he has a criminal history category of I. *See* U.S.S.G. Ch. 5 Pt. A; PSR at ¶ 26. His guideline imprisonment range is 51 to 63 months. *Id.* at ¶ 61. One to three years of supervised release is recommended under the Guidelines. Sent. Hr'g Tr.

VI. Law

A "court shall impose a sentence sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). The Sentencing Guidelines are advisory. *United States v. Booker,* 543 U.S. 220 (2005). "A district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The district court may depart after it "consider[s] all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.*; *see also United States v. Carter*, No. 17-2033, 2018 WL 2901316, at *2 (2d Cir. June 11, 2018) ("[I]t was proper for the district court to consider the Guidelines as a 'benchmark' alongside its review of the statutory factors when imposing sentence.").

VII. 18 U.S.C. § 3553(a) Considerations

Smith, 40, moved to the United States from Turkey in 2004. PSR at 2, ¶ 34. He was naturalized several years later. *Id.* His upbringing was unremarkable; he grew up in a intact,

5

middle-class home. *Id.* at ¶¶ 33-34. He received a college degree from a music college in Turkey, and graduated from a Turkish high school. *See* Sent. Hr'g Tr.

In 2005, defendant married. PSR at ¶ 35. The marriage produced one child, a boy, now 10 years old. *Id.* Smith and his wife were divorced in 2017. *Id.* He sees his son regularly, driving him to and from school, and provides financial support for the boy and his ex-wife. *Id.*

Smith is a truck driver for a produce company. *Id.* at ¶ 49. He works nights, often long hours, and sleeps during the day. *Id.* He has a steady history of employment. *Id.* at ¶¶ 50-53.

The defendant used cocaine for the first time in 2012. *Id.* at ¶ 41. This is not uncommon among night truckers who have grueling jobs. *Cf.* Kathryn Doyle, *Drug Use High Among Commercial Truck Drivers: Study*, Reuters, Oct. 25, 2013. He soon became addicted, using the drug several times per week, with the frequency and dosage increasing over time. *Id.* at ¶¶ 41-43. He spent approximately $200,000 on cocaine during the five year span leading up to his arrest. *Id.* at ¶ 43. Feeding this habit was the reason he decided to supplement his decent income by the criminal conduct to which he pled guilty.

Smith attended inpatient rehabilitation sessions twice: once for 28 days and once for six months. *Id.* at ¶ 42. This treatment did not cure his addiction. At the time of his arrest in 2017, he was still using cocaine. *Id.* Drug use made the first several months of defendant's pretrial supervision rocky—he failed six drug tests and had his bail revoked for a short period because of his failure to comply with treatment orders, a condition of his bail. *Id.* at ¶ 44.

At the time of the sentencing hearing, Smith had not failed a drug test for a year. *Id.* After a short remand into custody in February 2018, for failing to attend rehabilitation sessions, he was compliant with Pretrial Services orders. *Id.* While the addiction is apparently dormant, Smith desires to continue drug treatment and remain sober. As he stated at sentencing: "I want

6

to say thank you to Pretrial Services because I learned a lot of things from them. I have never been cleaner; almost a year now I'm clean, next month. So I am going to celebrate next month one year clean." Sent. Hr'g Tr. at 18:21-24.

VIII. Sentence

Smith was sentenced to two months incarceration to be followed by a six month term of supervised release. No fine was imposed because of his inability to pay one. No restitution was requested. A $100 special assessment was imposed.

The sentence balances the serious nature of the crime, requiring a term of incarceration, and the compelling need for the defendant to take his child to and from school and to guide the boy. He will be released from prison about the time that his son begins school for the year. He has enough assets to pay rent for two months so he can hold onto his apartment while he is incarcerated. There is good reason to believe that he can be promptly reemployed with the help of probation. More than six-months of supervised release might be counterproductive. *See United States v. Trotter*, No. 15-CR-382, 2018 WL 3321426 --- F.Supp.3d ---- (E.D.N.Y. July 5, 2018) (discussing problems of longer than necessary terms of supervised release).

Incarceration is required to deter others from illegally exporting arms. Unlawfully introducing weapons into foreign commerce, as defendant attempted to do, is dangerous and contrary to the interests of the United States. But, a longer term of incarceration would likely cause the defendant to lose his apartment and would negatively affect his son and defendant's relationship with the boy.

A six month term of supervised release is appropriate. *Trotter*, 2018 WL 3321426, at *1 ("[I] impose shorter terms of supervised release as needed."). Drug treatment will assist with rehabilitation. A longer period could prove overly burdensome for the defendant, who works

long hours at night. Based on his lack of criminal history and improvement while on pre-trial supervision, he seems unlikely to recidivate.

Defendant is subject to the mandatory conditions listed in U.S.S.G § 5D1.3(a) and standard conditions of U.S.S.G § 5D1.3(c) while on supervision. *Cf. Trotter*, 2018 WL 3321426, at *10-14. A drug treatment condition was imposed to help prevent the defendant from relapsing into drug use in the stressful months following his term of incarceration.

IX. Conclusion

Respectful consideration was given to the Sentencing Guidelines. This sentence is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: July 18, 2018
Brooklyn, New York